(69 Hun, 258.)

## WHITAKER v. WHITE et al.

(Supreme Court, General Term, First Department. May 12, 1893.)

1. REVIEW ON APPEAL—OBJECTIONS TO EVIDENCE.
    Where the only objection in the record to certain evidence is on account of immateriality and irrelevancy, the supreme court will not, on appeal from a judgment, consider objections based on the order of the introduction of the evidence.

2. EVIDENCE—DECLARATIONS IN LETTERS.
    On an issue as to whether a purchase of stocks by defendants, stockbrokers, for plaintiff, was authorized by the latter, a letter written by plaintiff to defendants after receiving letters calling for margins, saying that he did not understand their letters, that they should not have any of that stock charged to him, and that he intended to contest the purchase, was admissible as an answer to defendants' letters, as a letter calling for an answer, and also as being part of a correspondence which continued for some time thereafter.

3. SAME—MEMORANDA OF FUTURE ENGAGEMENTS.
    Defendants having testified that the order was given verbally in their office on June 11th, plaintiff claimed that he was out of the city on that day, and that the only conversation he had with defendants in regard to this stock was in their office, June 15th. *Held,* that entries made in plaintiff's diary prior to those dates, indicating engagements for those days, were inadmissible to show his absence from the city June 11th and his presence therein June 15th, as claimed by him.

Appeal from circuit court, New York county.

Action by Carroll Whitaker against Heman L. White and George W. Bartholomew. From a judgment for plaintiff, entered on a verdict, defendants appeal. Reversed.

For former report, see 22 N. Y. Supp. 240.

Argued before VAN BRUNT, P. J., and FOLLETT and BARRETT, JJ.

Wm. P. Toler, (George P. Gordel, of counsel,) for appellants.
Durnin & Hendrick, for respondent.

BARRETT, J. The contest here was mainly upon the defendants' counterclaim. The defendants were stockbrokers, and their counterclaim was for a loss upon the purchase, alleged to have been made on plaintiff's account, of 100 shares of the capital stock of the Louisville, New Albany & Chicago Railroad. The plaintiff denied the defendants' authority to make this purchase on his account, and the jury, by their verdict, have sustained his denial. No order was entered denying the defendants' motion for a new trial, and the appeal is solely from the judgment. The verdict is therefore conclusive, and we are limited to a review of the exceptions taken upon the trial. There were no exceptions to the judge's charge, and but two questions of evidence are presented by the record. The defendants excepted to the admission, over their objection, of certain letters written to them by the plaintiff. They also excepted to the admission of certain memoranda made by the plaintiff in his law diary.

As to the letters, the defendants now contend that they should

not have been admitted at all until after the plaintiff had rested. They bore solely upon the counterclaim, and the contention is that the plaintiff had no right, while upon the stand proving his case, thus to forestall the defendants' case. We find, however, no objection in the record to the procedure upon the trial, nor to the order of proof. The objection was to the materiality of the letters, and, as to one of them, that it contained declarations in the plaintiff's favor. These objections alone can now be considered, especially as we are not reviewing an order denying a motion for a new trial. The exceptions, as to two of the letters in question, are clearly untenable. One was objected to as immaterial, and "as not evidence against the defendants." They were, however, certainly material, being in answer to letters from the defendants asking for a deposit of money to secure them against depreciation of the plaintiff's stocks. To the first of these letters the plaintiff replied that he did not understand their letter. "What is the trouble?" he says. "I can't understand why my account is not good at present T. & P. prices, [meaning Texas & Pacific.] Why am I bound to deposit?" This letter ignored the Louisville, New Albany & Chicago transaction, and thus gave the defendants notice that the plaintiff did not consider that the stock of that railroad was in his account. It certainly called for an answer indicating at least that the deposit was required because of the depreciation in the Louisville, New Albany & Chicago Railroad stock, as well as in the Texas & Pacific. The second of these letters bore most directly upon the issue. The defendants had written to the plaintiff as follows: "Texas Pacific is 21½ to-day, and L., N. A. & C. [meaning Louisville, New Albany & Chicago] say 30 to 35, making 3 to 4,000 due, besides putting up margin." To this the plaintiff, in the second letter, replied: "You should not have any Louisville, N. A. & C. stock charged to me on your books. I will take it for you if I can raise the money, and own it; otherwise you must look after it yourself." This correspondence was certainly material, and, indeed, important, on the question of the defendants' authority to purchase the Louisville, New Albany & Chicago stock for the plaintiff.

A more serious question is presented by the exception with regard to the third letter. That was objected to as "immaterial, and as containing declarations in the plaintiff's favor." This letter is certainly open to the latter criticism; and if, as contended by the appellant, it was not in response to any letter written by them, but was "wholly isolated from the correspondence between the parties," we would have deemed it inadmissible, and would then have considered the further question as to whether its contents were, under all the circumstances, sufficiently prejudicial to the defendants to require a reversal of the judgment. But this letter was not an isolated statement, simply giving the plaintiff's side of the existing dispute. It was written on the 7th of November, and was, in fact, an answer to the defendants' telegram of the same date, and to their letter of the 4th. It

is true that the plaintiff testified that he did not think he made any answer to this letter of the 4th, but his letter of the 7th—under consideration—bears internal evidence that it was an answer to both the letter of the 4th and the telegram of the 7th. The letter of the 4th is a distinct notice that on the 9th the defendants would sell at auction (because of the plaintiff's failure to make his account good, with 10 per cent. margin) the Louisville, New Albany & Chicago stock, as well as the Texas & Pacific. There is a postscript to this letter in the following words: "If you would give us an order to sell the stocks at the N. Y. Stock Exchange previous to the date mentioned, we would much prefer that course." This postscript is directly answered by the plaintiff's letter of the 7th, thus: "If you wish an order, as you term it, to sell my 300 shares of Texas Pacific, I will give it, and do give it." He then refers to the Louisville, New Albany & Chicago, and refuses to give the order as to that stock, for the reason (we quote) "that I desire to contest that purchase and sale, (at its present price,) if it is intended to charge me, in a court of law." In their telegram of the 7th, the defendants informed the plaintiff that White (the member of their firm with whom Whitaker had mainly dealt) could not meet him as he, plaintiff, had requested. In the letter of the 7th the plaintiff says: "I regret that Mr. White would not meet me. I presume that he feels embarrassed over the L., N. A. & C. matter," etc.; thus plainly referring to the telegram of the same date. The letter of the 7th was therefore an answer to the defendants' previous letter and telegram. It was also part of a correspondence which did not terminate until the following December. Although the defendants did not apparently answer the letter in question, it certainly called for an answer, and it seems to have had the effect of postponing the threatened sale on the 9th of the Louisville, New Albany & Chicago stock. It was followed, too, on the 17th of the same month, by a stronger, though briefer, letter, in which the plaintiff declares that he has been most shamefully treated; and to this last letter the defendants replied, defending themselves against the accusation. We think, therefore, that the letter of the 7th was properly admitted—First, as part of a continuous correspondence between the parties; second, as an answer to the defendants' letter and telegram; and, third, as a letter calling, under the circumstances, for an answer.

We think, however, that the exceptions with regard to the entries in the plaintiff's diary were well taken. The defendants claimed that the order to purchase the Louisville, New Albany & Chicago stock was given by the plaintiff, in their office in New York, on the 11th of June, 1887. The plaintiff denied this, and claimed that the only conversation which he had with the defendants on the subject of the purchase of this stock was in their office, on the 15th of June, 1887; and he was supported in this claim by the witness Roosa. The object with which the first of these entries was offered was to prove that the plaintiff was in Saugerties and Kingston on the 11th of June, and could not, therefore, have been

in the defendants' office upon that day. The object with which the second entry was offered was to support the testimony that the plaintiff was in New York, with Roosa, on the 15th of June. These entries were therefore exceedingly important, and, in view of the crucial conflict between the parties as to dates, may well have turned the scale. We think they were inadmissible under well-settled rules. They did not purport to be entries with regard to any fact in issue. They were simply entries made in the plaintiff's law diary prior to the 11th and 15th days of June, indicating future engagements on the dates in question. They would doubtless have been proper to refresh the plaintiff's recollection as to the time and place of such engagements, but, if they failed to do this, they were not admissible as original entries, for they were irrelevant to the real issue. As to the 15th of June, the entry was clearly inadmissible, for the plaintiff was well able to testify to the interview at the defendants' office on that date without the aid of the memorandum. Bank v. Madden, 114 N. Y. 280, 21 N. E. Rep. 408; Marcly v. Schults, 29 N. Y. 346; Guy v. Mead, 22 N. Y. 462. And, further, the plaintiff did not testify to the correctness of either entry, when made. This was indispensable. Same cases. It is contended that, even if inadmissible, these entries could not have prejudiced the defendants, as the plaintiff had already testified without objection to their terms. We find, however, that the plaintiff did not testify to the terms of the entry of June 15th, and that his testimony as to that of June 11th was an inaccurate conclusion drawn from what really appeared in the book. He said that the latter entry showed that he was in Saugerties and Kingston on the 11th of June, whereas it really showed nothing more than that on a previous day he had agreed to be there. He gave no testimony, however, accurate or inaccurate, as to the terms of the entry of June 15th, and the admission of that entry was unquestionably prejudicial. The judgment should therefore be reversed, and a new trial ordered, with costs to abide the event. All concur.