Rep. 147, 48 N. Y. Supp. 590, affirmed 53 App. Div. 627, 65 N. Y. Supp. 1146; Deuble v. Same, 66 App. Div. 323, 72 N. Y. Supp. 755; Langan v. American Legion of Honor [Sup.] 70 N. Y. Supp. 663). These views lead to the conclusion that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.

(74 App. Div. 575.)

KANE v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. FAILURE TO INTRODUCE EVIDENCE—INSTRUCTIONS—PERSONAL INJURY.

Where the evidence in an action for personal injuries shows that an alleged injury is not apparent from objective symptoms, but will be disclosed by an X-ray examination, and plaintiff introduces a physician who testifies that he made such examination, but fails to show the result thereof, the defendant is entitled to an instruction that the jury may assume that the testimony of the witness, if given, would have been adverse to plaintiff, even though the fact of such examination was called out by defendant, who could have examined the witness as to the result of the examination.

Appeal from special term, Monroe county.

Action by James Kane against the Rochester Railway Company. A verdict was returned for plaintiff, and from an order granting a new trial plaintiff appeals. Affirmed.

The action was commenced on the 31st day of October, 1899, to recover damages for injuries alleged to have been sustained by the plaintiff on the 25th day of June, 1899, by coming in collision with one of defendant's cars at Franklin street, where it crosses defendant's tracks at Clinton avenue, in the city of Rochester, N. Y.; alleged to have been caused solely through the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Charles Roe, for appellant.
Charles J. Bissell, for respondent.

McLENNAN, J. The order appealed from was granted by the learned trial justice upon the ground, as appears by his opinion, that error was committed in refusing to charge the jury as requested by defendant's counsel, which request was substantially as follows: It appearing that Dr. Weigel made an X-ray examination of plaintiff's fingers and wrist, at the request of the plaintiff, and the plaintiff having omitted to ask Dr. Weigel, when called to the witness stand by him, what he discovered from such examination, the jury have the right to assume that Dr. Weigel's testimony, if given, would have been adverse to the plaintiff upon that point.

At about 10:30 in the evening of the 25th day of June, 1899, the plaintiff and one Hanify were riding with one Johnson in a wagon drawn by one horse, which was being driven by Johnson along Franklin street, in the city of Rochester, N. Y. In crossing Clinton avenue,

one of defendant's cars collided with the wagon, overturned it, and threw the occupants out; and the plaintiff alleges that he thereby sustained serious injury. He testified or gave evidence tending to show that his side was injured in such manner that a hernia resulted; that three fingers of the left hand and two of the right were put out of joint, and that his wrist was seriously injured, constantly pained and troubled him, and was in such condition at the time of the trial, two years after the accident, that he had to keep a leather bandage constantly around it when at work,—stating that he could not use the wrist in his work without such bandage, which was exhibited to the jury. There was a sharp controversy between the medical experts, as is usual in such cases, as to whether or not any hernia existed; but, remarkable as it may seem, they all agreed that at the time of the trial there were no objective symptoms of injury to the fingers or wrists that would account for the weakness and pain complained of and testified to by the plaintiff, and that, if there was any difficulty with the bones, an X-ray examination would disclose it. Upon the cross-examination of the plaintiff, it appeared that Dr. Weigel made an X-ray examination of the plaintiff's wrist and fingers, and Dr. Weigel, who was called as a witness by the plaintiff, testified upon his cross-examination that he did make such examination, and that he took X-ray photographs of the same, and that he then had such photographs, or the plates, in his possession; that he made the examination and took the photographs in December, 1899, or January, 1900. Plaintiff's counsel did not ask the plaintiff or Dr. Weigel what the X-ray examination disclosed as to the condition of the fingers or wrist, nor offer to produce the photographs showing their condition. The omission so to do was the basis of the request to charge made by defendant's counsel; and because of its refusal, to which an exception was duly taken, the order appealed from was made. Whether or not the refusal by the learned trial justice to charge as requested was reversible error presents the only question which need be considered upon this appeal.

Clearly, the request had reference to a material question of fact. The nature and extent of plaintiff's injuries were sharply contested. The character of the evidence given in respect to the injury to plaintiff's side was such as to leave it entirely problematical as to whether or not he had a hernia. One or two physicians testified that he unquestionably had, and another, eminent in his profession, testified positively that he had not; so that it is impossible to say what part of the verdict, if any, was awarded by the jury on account of the injury to the side, or that substantially all of it was not awarded because of the injury which the plaintiff claimed resulted to his fingers and wrist. Under those circumstances, if the defendant was entitled, as matter of law, to have the jury instructed that they had a right to assume that the bones of the fingers or wrist were in their normal condition, from the fact that the physician called by the plaintiff, who had examined them with the X rays, did not disclose the result of such examination, it cannot be said that the refusal to charge as requested was not prejudicial to the defendant. Was the defendant entitled to have the jury charged as requested? Fair play and common sense would cer-

tainly dictate an affirmative answer. Facts were within the knowledge
of the witness called by the plaintiff for the purpose of establishing the
seriousness of the injury which he sustained, which concededly would
demonstrate whether such injury was as serious as claimed or not.
Under those circumstances, plaintiff ought not to be permitted to with-
hold such information from the jury. It is very natural to suppose
that, if such information would have tended to corroborate plaintiff's
claim, it would have been called out by him; and the conclusion is
almost irresistible that he omitted so to do because he knew the in-
formation possessed by the physician as the result of the examination
made by him would be hurtful to his claim if communicated to the jury.
It is no answer to the proposition that the defendant called out the
fact that the X-ray examination had been made, and might have asked
what the result of such examination was. The defendant was not
called upon to take the chances of an answer by a hostile witness.
The question whether or not the plaintiff's fingers and wrist were seri-
ously and permanently injured was evidently regarded as important,
and one which would materially affect the plaintiff's right to recover,
or at least the amount of the verdict; and early in the course of the
trial, before Dr. Weigel, who had made the X-ray examination, had
been called by the plaintiff and sworn, it appeared that such examina-
tion had been made by him; and upon his cross-examination the plain-
tiff's attention was again called to the fact, so that the omission to in-
quire as to what the X-ray examination disclosed cannot be attributed
to oversight or mistake.

The precise question involved was decided by this court in Milliman
v. Railway Co., 3 App. Div. 109, 39 N. Y. Supp. 274. That was an
action brought to recover damages for injuries sustained by the plain-
tiff, who was riding with his daughter along one of the streets of the
city, which was also occupied by defendant's railroad. One of the
cars, which was following the phaeton, collided with it, and the injury
resulted. The important issue litigated was whether the collision oc-
curred immediately after the horse entered upon the track, or whether
the car followed the phaeton for a distance of 125 feet or more, over-
took it, and ran it down. The plaintiff's daughter, who was called as
a witness by him, and who, as appeared by her testimony, had oppor-
tunity to know the relative positions of the horse and car when the
horse entered upon the track, was not interrogated by counsel for
either litigant in regard to such positions. In his charge the learned
trial justice called the attention of the jury to the fact that the daughter
had not been examined upon this issue, although she had the same op-
portunity of knowing the facts as the plaintiff, and charged, in sub-
stance, that such omission might be taken into account by the jury
in determining on which side the truth lay. Plaintiff's counsel duly
excepted to the charge, and upon appeal urged that it presented such
error that the plaintiff's motion for a new trial should have been grant-
ed. In considering the question, Justice Follett, in writing the opin-
ion for the court, said:

"In case a litigant fails to produce a person known to be friendly to him
and to his cause, who is so situated that he must have knowledge of the
facts in issue, the jury is permitted to presume that the testimony of that

person would not have been favorable to the party. Kenyon v. Kenyon, 88 Hun, 211, 34 N. Y. Supp. 720, and cases there cited; Thomp. Trials, §§ 989, 1045; Tayl. Ev. (8th Ed.) § 117. * * * I think the rule is applicable to a case in which a party fails to interrogate a friendly witness, so situated as to be presumed to have knowledge of the existence or nonexistence of the vital facts in issue, as it is to the case of a failure to produce such a witness. Indeed, I think the omission to interrogate a friendly witness in respect to facts presumably within his knowledge is more significant than the failure to call such a person as a witness, and that the presumption that the testimony would not have been favorable to the party's case is stronger than the one which arises from the failure to produce such a person as a witness."

The learned counsel for the plaintiff in the case at bar concedes, as did the plaintiff's counsel in the Milliman Case, that the rule, as stated, applies to a party who fails to produce a friendly witness who has knowledge of facts material to an important issue. The cases of Kenyon v. Kenyon, 88 Hun, 211, 34 N. Y. Supp. 720, Sherlock v. Insurance Co., 21 App. Div. 18, 47 N. Y. Supp. 315, and Carpenter v. Railroad Co., 13 App. Div. 328, 43 N. Y. Supp. 203, fully sustain the correctness of that proposition; but plaintiff's counsel contends, as was urged in the Milliman Case, that it does not apply to a party who fails to interrogate a friendly witness, called and sworn by him, as to facts material to an important issue, although known to be within the knowledge of such witness. There is no reason for such a distinction, and, if made, it would only enable a party to avoid the effect of the rule adverted to by calling a friendly witness who had knowledge of facts pertinent to a material issue, or by compelling his adversary to take the hazard of interrogating the witness as to such facts. The defendant was not bound to prove its defense by plaintiff's expert physician, who, at plaintiff's request, made a careful examination of the injured parts to ascertain the extent of their injury; and the burden was upon the plaintiff not only to produce him, but also to interrogate him as to facts within his knowledge relating to the important issue, or expose himself to the hazard of unfavorable inferences. A party seeking to recover for serious injury to his side and wrist ought not to be permitted to call as a witness an expert physician, who at his request examined and learned the condition of both, and interrogate him only as to the condition of one, without exposing himself to the hazard of having the jury infer that, if the witness had been asked as to the condition of the other, his answer would have been unfavorable to the party calling such witness. The rule laid down in the Milliman Case, supra, is logical. Its application will tend to prevent the suppression of the truth in the trial of causes, and should be adhered to and followed. It follows that the order appealed from should be affirmed, with costs.

Order affirmed, with costs. All concur.